IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v.    ) | Criminal No. 19-284 |
| ) | Judge Nora Barry Fischer |
| CHRISTIAN BURRUS,   ) | |
| ) | |
| Defendant.   ) | |

**MEMORANDUM OPINION**

I. INTRODUCTION

Presently before the Court is a motion for compassionate release filed by Defendant Christian Burrus and the Government's opposition thereto. (Docket Nos. 40; 46). Defendant's motion has been exhaustively briefed by the parties and supplemented with exhibits, including medical records filed under seal with the Court. (Docket Nos. 40; 42; 43; 46; 51; 52; 55; 58). After careful consideration of the parties' arguments in light of the prevailing legal standards, and for the following reasons, Defendant's motion [40] is denied, as the Court declines to exercise its discretion to reduce his sentence.

II. BACKGROUND

Defendant is presently serving a sentence of 48 months' incarceration imposed by this Court on February 21, 2020 following his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), for conduct occurring on July 23, 2018. (Docket No. 35). As the Court detailed in its Memorandum Opinion denying his suppression motion, on that date, Defendant was a passenger in a vehicle which was pulled over for an expired registration on Frankstown Road in Penn Hills. *See United States v. Burrus*, 402 F. Supp. 3d 116, 119-121

(W.D. Pa. Aug. 29, 2019).  The responding officer ran an NCIC check on Defendant and determined that there was an outstanding warrant for his arrest, subjected him to a patdown search and recovered a stolen 9-millimeter firearm from his waistband.  *See id.*

Defendant was initially charged in state court but the case was adopted federally, with a federal grand jury returning an indictment against him on October 9, 2018 with one count of possession of a firearm by a convicted felon in violation of § 922(g)(1).  *Id.*  He was in custody of the Allegheny County Jail at the time of the indictment awaiting disposition of state charges and brought to federal court pursuant to a writ of habeas corpus ad prosequendum.  (Docket No. 7).  He was later transferred to the Indiana County Jail in January of 2019 where he was held in presentence custody.

After the suppression motion was denied, the parties reached a plea agreement, the terms of which included Defendant pleading guilty to a revised § 922(g)(1) charge set forth in an information, the dismissal of the original indictment and also preserved his ability to appeal this Court's suppression ruling.  (Docket No. 7-1).  At sentencing, the parties did not dispute that the advisory guidelines range was 63 to 78 months' incarceration based upon a total offense level of nineteen and a criminal history category of VI.  (Docket No. 26).  The defense moved for a downward departure and a downward variance, both of which were contested by the Government, with its counsel advocating for a sentence within the advisory guidelines range.  (Docket No. 34).  The Court invited the parties to present evidence and the defense provided the Court with supporting character letters, medical records and certificates and other information pertaining to programs he completed while in presentence custody at the Allegheny County Jail and Indiana County Jail.  (Docket Nos. 29; 34).  Defendant's mother, Audrey Burrus, testified and he also made a statement to the Court.  (Docket No. 34).

After hearing argument from counsel, the Court denied Defendant's motion for downward departure under Guideline § 4A1.3(b), finding that he had not demonstrated that his criminal history category of VI "substantially over-represents the serious of [his] criminal history or the likelihood that [he] will commit other crimes." U.S.S.G. § 4A1.3(b)(1). In declining to exercise its discretion to depart, the Court noted that Defendant's criminal record showed a pattern of recidivism and that light treatment by the state system failed to dissuade him from committing the same type of offense in the instant case. *See Sent. Hr'g Trans. 2/21/20*. Specifically, the Court referenced that:

- Defendant's prior state cases were appropriately counted under the guidelines because they took place on different days between June of 2003 and August of 2004 and were separated by intervening arrests;

- each of these four criminal incidents involved unlawful possession of firearms;

- he also had convictions for DUI in 2009, an escape in 2011, and possession of controlled substances in 2016, with a stolen firearm being located in the vehicle within which he was pulled over; and,

- his juvenile record did not result in criminal history points but was troubling including four separate robbery cases and an assault.

*Id.* Defendant was also on probation when he was arrested and found in possession of a firearm on June 23, 2018. (*See PIR*)

The Court heard additional argument as to Defendant's motion for variance and the application of the section 3553(a) factors, and then granted his motion, in part, varied downward from the advisory guidelines range of 63 to 78 months' incarceration and imposed a sentence of 48 months' incarceration. *See Sent. Hr'g Trans. 2/21/20*. The Court specifically found that such sentence was sufficient, but not greater than necessary to meet all of the goals of sentencing in this

case.  *See* 18 U.S.C. § 3553(a).  The Court detailed factual and legal support for the variance on the record and noted on the Statement of Reasons form that the variance was based on the following: Defendant's mental and emotional health conditions, including post-traumatic stress disorder and depression; his pre-sentence rehabilitation efforts, as was reflected in his pursuit and completion of various programs while incarcerated; and his exhibition of genuine remorse for his criminal behavior during his allocution and admissions to family and friends of the wrongfulness of his conduct.  *See Sent. Hr'g Trans. 2/21/20.*  As part of its discussion, the Court commented on: Defendant's age, 38; his difficult upbringing; his family ties and responsibilities to his children, who were being cared for by their mothers and/or grandparents; and, his physical ailments including diabetes and hypertension but that such conditions appeared to be controlled with medications as well as recent weight loss.  *Id.*  In addition to the 48-month term of incarceration, the Court imposed a term of supervised release of 3 years with standard and additional conditions; waived any fine; ordered him to pay a $100 special assessment and to forfeit the firearm to the United States.  (Docket No. 35).  The Court also deferred ruling to the State Court as to whether the sentence should run concurrently or consecutively to any sentence for the violations at Allegheny Court of Common Pleas Docket No. 02-CR-002222-2017.  (*Id.*).

Defendant filed a Notice of Appeal on March 5, 2020 challenging the Court's suppression ruling.  (Docket Nos. 37; 38). His appeal remains pending before the U.S. Court of Appeals for the Third Circuit at Appeal No. 20-1521.  (Docket No. 39).  A review of the state court docket indicates that Defendant's case is "inactive" and that an "order closing interest" was filed on June 17, 2020.  *See Comm. v. Burrus*, Docket No. 02-CR-002222-2017, (C.P. Allghy) *available at:* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-02-CR-0002222-2017&dnh=YIeRtozmchWmpRtTDQFTPg%3d%3d (last visited 7/7/2020).

Subsequent to the sentencing hearing, the U.S. Marshal Service transferred Defendant from the Indiana County Jail to the Northeast Ohio Correctional Center ("NEOCC") while he awaited designation to a Bureau of Prisons ("BOP") facility. (*See* Docket No. 52 at 8). Due to the COVID-19 pandemic, BOP transfers of inmates were initially stopped in March of 2020 and while some transfers of prisoners have taken place more recently, the practice has slowed considerably from pre-March 2020 levels. (*See* Docket Nos. 40; 46). As a result, Defendant remains housed at the NEOCC awaiting designation to a BOP facility. (*Id.*). The NEOCC reported its first case of COVID-19 on June 18, 2020. (Docket No. 58). The latest information provided to the Court indicates that there have been eight (8) positive COVID-19 tests among the federal inmate population at the NEOCC but that three (3) of those inmates have fully recovered.

As noted, Defendant seeks compassionate release under the First Step Act's recent amendments to 18 U.S.C. § 3582. (Docket Nos. 40; 51; 58). He argues that his diabetes diagnosis coupled with the ongoing COVID-19 pandemic serve as extraordinary and compelling reasons to reduce his sentence. (*Id.*). He admits that recent medical records from the NEOCC state that he has not been prescribed insulin for his diabetes since February 27, 2020 with the medical notes stating that such condition is "lifestyle controlled" due to recent weight loss and diet changes. (Docket No. 51). However, he contends that he is unable to manage his condition and provide self-care in the pandemic environment given his mental health issues and the conditions at the prison. (*Id.*). The Government concedes that Defendant was diagnosed with Type II diabetes in October of 2019; that the CDC recognizes diabetes as a risk factor for COVID-19; and that his diabetes satisfies the definition of "extraordinary and compelling reasons" for which a court may grant compassionate release. (Docket No. 55). The Government also does not contest that Defendant has exhausted his administrative remedies since he is not technically in BOP

5

custody. (*Id*.). However, the Government opposes any reduction in Defendant's sentence after a full consideration of the relevant section 3553(a) factors, particularly as to his extensive criminal history placing him in criminal history category VI; his demonstrated recidivism committing repeated firearms offenses; prior violations of court conditions; and commission of crimes while under court supervision. (*Id*.). The Government also relates the position of the U.S. Probation Office that Defendant should continue to remain detained in light of his extensive criminal history. (*See* Docket No. 46 at 23).

With respect to the relevant procedural history, Defendant filed the pending motion on May 1, 2020, along with selected medical records. (Docket Nos. 40; 42; 43). The Government filed its Response in opposition on May 7, 2020. (Docket No. 46). The Court ordered Defendant to file a Reply by May 21, 2020 and to include records from the NEOCC. (Docket No. 48). Defendant submitted both by the established deadline, (Docket Nos. 51; 52), but counsel noted his inability to obtain records from Prime Care, the contractor to the Indiana County Jail, so the Court issued an order directing Prime Care to supply the records. After Prime Care complied with the Court's Order, Defendant furnished a copy of such records to the Court and the Government. (*See Entry dated 6/2/2020*). The Government filed its Sur-Reply Brief on June 3, 2020. (Docket No. 55). The Court then granted Defendant leave to file a Supplemental Brief, which he did on June 18, 2020. (Docket No. 58). No further briefing or supplementation has been requested and the Court considers this matter to be fully briefed and ripe for disposition.

III. DISCUSSION

Prior to addressing the merits of Defendant's motion, the Court must consider its jurisdiction over same. Because Defendant's appeal remains pending, "the District Court's jurisdiction to decide the compassionate release motion [is] confined to denying it, indicating that

it presents a substantial issue, or indicating that it would be granted if [the Court of Appeals] were to remand the case to the District Court for that purpose." *United States v. Pawlowski*, --- F. App'x ----, 2020 WL 3483740, at *1-2, n.3 (3d Cir. Jun. 26, 2020) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L.Ed.2d 225 (1983) and FED. R. CRIM. R. 37(a)).  With those limitations in mind, the Court continues its analysis.

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. *See Pawlowski*, 2020 WL 3483740, at *2.  Pursuant to that provision, a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

> In addition, the reviewing court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*United States v. Graves*, Crim. No. 17-318, Docket No. 28 (W.D. Pa. Jun. 10, 2020) (Hornak, J.) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

Here, the Government concedes both (1) and (3) because Defendant has exhausted administrative remedies and his diagnosis of Type II diabetes coupled with the ongoing COVID-19 pandemic may serve as an extraordinary and compelling reason for a sentence reduction due to the increased risk of complications if he contracts COVID-19.  (Docket No. 55). Therefore, the sole dispute between the parties is whether the relevant § 3553(a) factors warrant a

reduction in Defendant's sentence. (*See* Docket Nos. 40; 42; 43; 46; 48; 51; 52; 55; 58).

As the Court of Appeals recently affirmed in *Pawlowski*, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the Court. *See Pawlowski*, 2020 WL 3483740, at *2 (citing *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)). In that case, the Court of Appeals upheld the District Court's decision to decline to reduce the defendant's 15-year sentence to approximately 2 years despite his "suffer[ing] from several health conditions, including hypertensive heart disease, chronic obstructive pulmonary disease (COPD), dyspnea (shortness of breath), sleep apnea, and [having] only one lung as a result of a pulmonectomy." *Id*. at *1. Pawlowski was also incarcerated at FCI Danbury, which at the time had reported 98 COVID-19 cases among inmates, one death of an inmate, and 91 recoveries as well as a similar outbreak among corrections staff. *Id*. at *1. Overall, the District Court did not abuse its discretion by holding that the § 3553(a) factors weighed against granting him compassionate release. *Id*. at *3.

Having carefully considered all of the § 3553(a) factors in this case, the Court declines to exercise its discretion to reduce the 48-month term of incarceration in Defendant's case, as such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing. *See* 18 U.S.C. § 3553(a). Neither party challenged the procedural or substantive reasonableness of the initial sentence by filing a notice of appeal on those issues. In this Court's estimation, such sentence remains fair and appropriate, for the reasons previously detailed on the sentencing record, which are not outweighed by the increased risk of contracting COVID-19 faced by Defendant while incarcerated at NEOCC or another BOP facility, should he be transferred. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify

compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The Court recognizes that Defendant's diagnosis of Type II diabetes is of particular concern during the COVID-19 pandemic and the recent reports of such cases among the inmate population at the NEOCC, where he is currently housed.  *See United States v. Stallings, 2020 WL 3619071*, at \*3 (M.D. Pa. Jul. 2, 2020) (noting that the CDC recognizes that people with Type II diabetes are at increased risk for severe illness if they contract COVID-19); *see also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#diabetes  (last  visited  7/7/2020). However, the medical records from the NEOCC make clear that the status of Defendant's Type II diabetes is "lifestyle controlled" in that he was initially diagnosed in October 2019 and was prescribed insulin injections for a time but that he "changed his diet, started daily exercise (mostly body building), lost 15 [pounds], and has not needed insulin (or oral [medications]) since." (Docket No. 52 at 51).  The Prime Care records from January of 2020 reflect the same.  (*See Price Care Records*, at 417/421).   Indeed, a January 9, 2020 medical note references that "patient is being discontinued from DM [diabetes mellitus] and HTN [hypertension] medications.  Has been well controlled without medication since November [2019].  Patient reports he has been exercising daily and changed his diet."  (*Id*.).  All told, the longitudinal medical record reveals that Defendant has been provided with adequate medical treatment throughout the course of his incarceration including making necessary medication changes and providing counseling for his numerous refusals to take certain medications.  (*See* Docket No. 52; *Prime Care records*).

In any event, while the risks presented by Defendant's medical conditions and the COVID-19 pandemic are very serious, they do not outweigh the other § 3553(a) factors supporting the imposition of a 48-month term of incarceration in his case, for which he has been incarcerated, at most, for 23 months or approximately half of the sentence. *See Pawlowski*, 2020 3483740, at * 3. The Court has once again carefully considered all of the § 3553(a) factors and finds that Defendant's "history and characteristics" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[, and] to afford adequate deterrence to criminal conduct," do not justify a sentence reduction here. 18 U.S.C. §§ § 3553(a)(1), (a)(2)(A)-(B). To reiterate the Court's reasons stated at the sentencing hearing: the instant offense was Defendant's fifth firearms related conviction; his extensive criminal history places him in criminal history category VI; he was on probation and had an outstanding warrant for his arrest at the time he committed the offense; he repeatedly violated court conditions; and, lighter penalties imposed in state court did not sufficiently deter him from engaging in the same type of criminal behavior. *See Sent. Hr'g Trans. 2/21/20*. At the same time, the Court found that a downward variance of 15 months below the advisory guidelines range of 63-78 months was appropriate given his mental and emotional health conditions, post-offense rehabilitation efforts, and genuine remorse. *See id*. No further reduction of the sentence is appropriate.

IV.     CONCLUSION

Based on the foregoing, Defendant's Motion for Compassionate Release [40] is DENIED. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Date:		July 7, 2020

cc/ecf:		All counsel of record